[Civ. No. 3466.  First Appellate District, Division Two.—December 21, 1920.]

FRANK E. DUNLAP, as Administrator, etc., Plaintiff and Appellant, v. COMMERCIAL NATIONAL BANK OF LOS ANGELES (a Corporation), Defendant and Respondent.

BETTIE B. DUNN, Plaintiff and Respondent, v. COMMERCIAL NATIONAL BANK OF LOS ANGELES (a Corporation), Defendant and Respondent.

[1] ACTION ON CHECK — CONSIDERATION — ASSIGNMENT OF DEPOSIT — SUFFICIENCY OF EVIDENCE.—In this action against a bank to recover on a check after the death of the drawer, the findings that the check was given for valuable services and was intended as a complete assignment of the whole of the amount of the deposit are supported by the evidence.

[2] ID.—EVIDENCE—INTENT OF DRAWER.—In an action against a bank to recover on a check, after the death of the drawer, on the theory that the check operated as an equitable assignment of the entire balance of the funds to the credit of the drawer, the admission of plaintiff's answer to a question as to the drawer's purpose in signing the check, over objection that the question called for the conclusion of the witness, was not reversible error, where the witness immediately afterward testified at length as to what was said and done when the check was executed.

[3] CHECK — CONSIDERATION OF PERSONAL SERVICES — ASSIGNMENT OF DEPOSIT—TRANSACTION NOT A GIFT CAUSA MORTIS.—Where a check drawn and delivered shortly before the drawer's death was given for valuable services and was intended as a complete assignment of the whole of the deposit of the drawer, the transaction was not a gift *causa mortis.*

3.  Check as valid gift *inter vivos,* note, Ann. Cas. 1912A, 330. Check as valid gift *causa mortis,* note, 10 Ann. Cas. 475.

[4] ID. — EQUITABLE ASSIGNMENT OF FUNDS — CODE PROVISION.—The provision of the uniform negotiable instruments law embodied in section 3265e of the Civil Code, which provides that a check of itself does not operate as an assignment of any part of the funds to the credit of the drawer and the bank is not liable to the holder unless and until it accepts or certifies the check, does not, standing alone, militate against the doctrine of equitable assignments of specific property accompanied either by the delivery of a check or evidenced in whole or in part by other means.

[5] ID.—DEATH OF DRAWER — PRESENTATION OF CLAIM UNNECESSARY. Where a check drawn and delivered shortly before the death of the drawer was given for valuable services and was intended as a complete assignment of the deposit of the drawer with the bank, the payee had no claim against the drawer's estate and it was not necessary for her to present a claim, or to make the administrator of the drawer's estate a party defendant in an action to recover on the check.

[6] ID.—ACTION BY ADMINISTRATOR OF DRAWER'S ESTATE—CONSOLIDATION WITH ACTION ON CHECK — EVIDENCE. — Where an action brought against a bank by the payee of a check to recover the amount of the deposit of the drawer and an action by the administrator of the drawer's estate to recover the deposit were consolidated by consent, there was no error in admitting evidence binding on the administrator concerning the assignment of the deposit by the drawing and delivery of the check.

[7] ID.—COSTS—CONSOLIDATED ACTIONS—JUDGMENT AGAINST ADMINISTRATOR.—Where the payee of a check and the administrator of the drawer's estate brought separate actions against the bank for the amount of the deposit, and the court, instead of making a formal order of interpleader, consolidated the actions and ordered the administrator's complaint to be considered as a cross-complaint, a judgment against the administrator for costs and in favor of the payee and bank was proper.

APPEAL from a judgment of the Superior Court of Los Angeles County. L. H. Valentine, Judge. Affirmed.

The facts are stated in the opinion of the court.

Stewart & Stewart and L. B. Stanton for Appellant.

Geo. M. Harker and S. M. Bernard for Respondent Dunn.

James, Smith & McCarthy for Respondent Bank.

BRITTAIN, J.—From a single judgment and on a single transcript the administrator of the estate of John W. Kenton

appeals in these consolidated cases. The record shows that the respondent Dunn sued the respondent bank, claiming that Kenton in his lifetime had made an equitable assignment of the entire balance to his credit with the bank and had given her a check for the entire balance, payment of which was refused by the bank when it was presented after his death. After the Dunn suit was commenced Dunlap, as administrator of Kenton's estate, sued the bank on another check drawn by him as administrator for a portion of the amount on deposit.

The bank answered in each case, setting up the facts and sought by motion to be permitted to pay the amount for which it admitted it was liable into court and to have the two claimants interplead. Under the circumstances, this would seem to have been the proper course, but for some reason which does not appear the motion was denied. The bank does not appeal and the appellant does not attack this order. Its only importance at this time is as an explanation of the subsequent proceedings which are attacked.

When the motion for interpleader came on the parties in both suits were present in court and in each case an order was then made reciting that it was made by consent of the parties and by the consent of the plaintiff in the corresponding case. Each order directed that the case in which it was made should be consolidated with the other and the two cases tried together. Such trial was had, and the trial court in construing the consent order of consolidation, which had been·made by another judge of the same court, ruled that the complaint of the administrator should be considered as a cross-complaint in the Dunn case. The court found the fact of assignment as alleged in the Dunn complaint. Judgment was accordingly entered for Miss Dunn for the amount of the fund in dispute. It ordered the bank to pay the money into court and the bank's dismissal when this should be done. Costs were awarded to both the bank and Miss Dunn to be paid from the estate in due course of administration. So far as the bank was concerned the judgment required it to do exactly what it sought to do in the first instance. At the trial the administrator on the one side and the respondent Dunn on the other introduced and were offered an opportunity to intro-

duce the same evidence which would have been pertinent and material had they formally interpleaded.

The appellant attacks the judgment on the merits and also because of the procedure adopted, which he claims inextricably tangled the rights of the parties. In his brief, no doubt because of his reliance upon the second ground of attack, he has mingled his argument on both grounds. There is no difficulty in disposing separately of the questions presented, and the second ground of attack may be better understood by considering first the case on its merits.

[1] The trial court found that Kenton, for valuable services rendered to him by the respondent Dunn, made and delivered to her the check which the bank refused to pay after the drawer's death; that as between Miss Dunn and Kenton the transaction was complete at the time of his delivering the check to her, and that the delivery was made and by them was intended to be a complete assignment to her by Denton of all his right, title, and interest in and to the whole amount of the deposit. There is evidence to support these findings and they are conclusive of the facts upon this appeal, unless the appellant's attack upon them is to be sustained. The attack on the ground of error in admitting any evidence on behalf of the claim of the respondent Dunn as against the appellant will be considered with the second phase of the case. For the present it may be passed as without substance.

[2] While Miss Dunn, who was the niece of Kenton, was on the witness-stand, and after the check given her had been identified, she was asked: "For what purpose, if you know, did he sign it?" An objection on the ground that the question called for her conclusion was overruled, and this is assigned as reversible error. In view of the fact that she immediately afterward testified at length concerning what was said and done when the check was drawn, signed and delivered to her, it does not appear that the appellant was injured by the ruling. She testified that her uncle said: "I am here sick. I don't know how long I will be sick or how sick I will be. When I asked you to take care of me little did I think you would have to go through what you have. I never can pay you enough for what you have done for me. Fill the check out for the full amount in the bank." It is contended that this evidence is insufficient to sustain

the findings, which have been summarized, and authorities have been quoted upon the general unsatisfactory character of the evidence of beneficiaries of such transactions after the death of the other party to them. These matters were for the consideration of the trial judge. The appellant did not cross-examine Miss Dunn, no evidence of any kind was offered to contradict or discredit her, and the evidence supports the findings. [3] The argument that the transaction constituted a gift *causa mortis* rather than a payment is but the same attack in another form on the evidence and the findings. It is without force.

[4] A lengthy argument is made on the effect of that provision of the uniform negotiable instruments law embodied in section 3265e of the Civil Code (as added by Stats. 1917, p. 1559), which provides that a check of itself does not operate as an assignment of any part of the funds to the credit of the drawer and the bank is not liable to the holder unless and until it accepts or certifies the check. The provisions of the section are in accord with the law of this state prior to the adoption of the present negotiable instruments law. (*Donohoe-Kelly Banking Co.* v. *Southern Pac. Co.*, 138 Cal. 183, [94 Am. St. Rep. 28, 71 Pac. 93].) These rules concerning negotiable instruments standing alone do not militate against the doctrine of equitable assignments of specific property accompanied either by the delivery of a check or evidence in whole or in part by other means. All parties to this appeal agree that the relationship of the bank to the drawer of the check was that of debtor and creditor. Despite the effect of the code section on the rights of the bank, if from the entire transaction between Kenton and Miss Dunn it clearly appeared that it was their intention to pass title to the chose in action, then as between Miss Dunn and Kenton there was an assignment of the debt of the bank. (*Goldman* v. *Murray*, 164 Cal. 419, [129 Pac. 462].) From the evidence submitted the court found there was such an assignment and that as between Kenton and Miss Dunn the transaction was entirely closed when the check was delivered. [5] If she became the owner of the debt, it never became a part of Kenton's estate and his administrator had no right to it nor to any part of it. Her suit against the bank was not merely on the check but on the assigned debt of the bank to Kenton.

Kenton's debt to her had been satisfied by the assignment. She, therefore, had no claim against Kenton's estate, and it was not necessary for her either to present a claim against the estate or to make the administrator a party to her suit against the bank. After Kenton's death the administrator of his estate claimed the chose in action which the trial court found had been assigned to Miss Dunn by Kenton in his lifetime. The bank admitted its liability on the debt, and the only real dispute was between Miss Dunn and the administrator. It is argued that under the probate laws Miss Dunn might have presented a claim to the estate and sued on the debt which by the assignment Kenton had satisfied. It was not necessary that she should do so. She had no claim against the estate, and it is well settled that one who claims as his own adversely to an estate specific property held and claimed by the estate cannot be called a creditor of the estate within the meaning of the probate law. If there was an assignment by Kenton, regardless of anything which the books of the bank may have shown, the property was the property of Miss Dunn. If the apparent title was in the estate, it was held by the estate as trust property. Either under the claim of ownership or of trust she might have sued the administrator without presenting any claim against the estate. (*Estate of Dutard,* 147 Cal. 253, 256, [81 Pac. 519].) The argument based upon the provisions of the inheritance tax law has no bearing on the case. If Kenton in satisfaction of his debt transferred the property in his lifetime, and the trial court so determined, the inheritance tax law did not reach that property. On the merits, the judgment following the conclusions of law based on the findings, and they in turn being supported by the evidence, the appellant's attack upon the first ground must fail.

On the matters of procedure, the appellant contends that the trial court had no power to make the order of consolidation because the code section concerning consolidation of actions provides, in substance, that whenever several actions are pending between the same parties in the same court upon causes of action which might have been joined, the court may order the actions to be consolidated into one, and that the suit of Dunn and the suit of Dunlap, as administrator, each being against the bank, were not between the same parties. The question is not one of jurisdiction. Until

the consolidation the trial court had jurisdiction of both actions, and any order it may have made in either regarding its trial would have presented a question of error and not of power. The record shows that the order made in each case was made by consent of the parties to that case and of the plaintiff in the corresponding one. If the order was erroneous, the appellant cannot attack for error an order made with his consent.

[6] Despite the consent order of consolidation, in his briefs the appellant has insisted on considering the two cases separately and not as a single case. If the formal order for interpleader had been made instead of the consent order for consolidation, the appellant administrator and the respondent Dunn would have tried the single issue of whether or not there was an assignment. At the opening of the trial, all the facts being pleaded but no formal order having been made designating Dunlap, as administrator, defendant in the Dunn suit or Dunn as defendant in the Dunlap suit, the court ordered the Dunlap complaint to be considered as a cross-complaint in the Dunn suit. It is argued that by reason of this order the appellant Dunlap was taken by surprise and was not prepared to meet the issue of assignment. That contention was not presented to the lower court, but only the technical contention that no formal pleading had been filed tendering the only issue in the case directly to the administrator. The consent order of consolidation was made a considerable time before the trial, and the appellant could not have been misled. The claim of surprise made in this court in the first instance comes too late. There was no error in the court admitting evidence in the consolidated action binding on the appellant as on other parties to the consolidated action concerning the assignment. Under the evidence and findings respondent Dunn was entitled to judgment.

The contention that the judgment should be reversed because the court concluded that Dunlap, as administrator, should take nothing is entirely without merit. It is based on the contention that, because an employee of the bank made a transfer on its books of the single debt for which it was liable, Dunlap, as administrator, should have had judgment against the bank regardless of whether or not the bank paid its single debt to Miss Dunn as Kenton's

assignee. In the single consolidated case the determination that Kenton had transferred to Miss Dunn all his rights against the bank necessarily led to the correlative conclusion that his estate had no claim against the bank.

[7] Lastly, it is contended that the judgment for costs was erroneous. In effect the same end was accomplished by the consent order of consolidation as would have been accomplished by the formal order of interpleader. If the formal order of interpleader had been made, the bank, as purseholder, would have been relieved of costs and the respondent Dunn, being entitled to the fund, would have been awarded costs against the administrator to be paid in due course of administration. An examination of the entire record fails to show any failure of substantial justice under any contention of the appellant.

The judgment is affirmed.

Nourse, J., and Langdon, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 17, 1921.

All the Justices concurred, except Wilbur, J., who voted for granting of petition.